UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STACY L. SKIBINSKI, o/b/o A.I.V.,

                           Plaintiff,

   v.                                      **DECISION AND ORDER**
                                            13-CV-402S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

      1.      Plaintiff Stacy L. Skibinski challenges an Administrative Law Judge's ("ALJ") decision, dated July 28, 2011, wherein the ALJ determined that Plaintiff's son A.I.V. was not disabled under section 1614(a)(3)(c) of the Social Security Act. Plaintiff protectively filed an application for supplemental security income on September 14, 2009, alleging that the child's disability began on August 1, 2008. Plaintiff now contends that the ALJ's determination is not based upon substantial evidence, and reversal is warranted.

      2.      Plaintiff's application was initially denied on March 24, 2010. Plaintiff was granted a hearing on that denial and, on July 7, 2011, she and her son testified before the ALJ. The ALJ issued a decision denying the application for supplemental security income on July 28, 2011, and the Appeals Council denied Plaintiff's request for review on April 9, 2013, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on April 23, 2013.

      3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.	An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, it must demonstrate that: (1) the child has not engaged in any substantial gainful activity; (2) if not, whether he or she has a "severe" impairment or combination of impairments that cause "more than minimal functional limitations"; and (3) his or her impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

7.	Where an impairment medically meets or equals a listed impairment, the child will be found disabled. 20 C.F.R. §§ 416.924(d)(1); 416.925.  If a child's impairment or combination thereof does not meet or equal a listed impairment, the ALJ must assess all functional limitations caused by the child's impairments in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a),(b)(1).  A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when an impairment or the cumulative effect of impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation "interferes very seriously" with that ability.  20

C.F.R. § 414.926a(e)(3)(i).

    8.    After applying the three-step evaluation in this case, the ALJ concluded that Plaintiff's child, who was seven years old at the time of the decision: (1) had not engaged in substantial activity since the application date of September 14, 2009; (2) had the following severe impairments: Attention Deficit Hyperactivity Disorder ("ADHD"); Oppositional Defiant Disorder ("ODD"); and disruptive behavior disorder; and (3) did not have an impairment or combination of impairments that either met, medically equaled, or functionally equaled a listed impairment. (R. 15.) With respect to the functional-equivalent domains, the ALJ found that Plaintiff's child had a less than marked limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being. (R. 16-20, 23-25.) The child had no limitations in the remaining two domains. (R. 20-22.) Because the child did not have an impairment or combination thereof that resulted in the functional equivalent of a listed impairment, the ALJ held that the child was not disabled under the relevant section of the Social Security Act.

    9.    Plaintiff first argues that the ALJ's determination that A.I.V. did not have a marked limitation in his ability to attend to and complete tasks, interact and relate with others, and care for himself is not supported by substantial evidence. More specifically, Plaintiff claims that the ALJ failed to consider all of the evidence in the record, including A.I.V.'s medical and school records showing that he was unable to communicate with adults, control his anger, avoid conflict, aggression, hyperactivity, impulsiveness, sit for any length of time, and that he had been diagnosed with ADHD, ODD, and disruptive behavior. Plaintiff also claims that the ALJ did not provide a sufficient explanation for finding a less than marked limitation in these three domains. Additionally, Plaintiff points out the lack of

any medical expert testimony to support the ALJ's findings with respect to these three domains.

10.     The Court has reviewed the ALJ's decision in light of Plaintiff's first argument and finds that the ALJ's step 3 determination is proper as a matter of law and is supported by substantial evidence.

11.     As an initial matter, the ALJ stated that he considered all of the relevant evidence in the case record, which included objective medical evidence and other relevant evidence from medical sources, information from other sources (such as A.I.V.'s teachers), A.I.V.'s testimony and his mother's statements, and any other relevant evidence in the case record, including how A.I.V. functioned over time and in all settings. The Court finds the ALJ's discussion of the evidence sufficient.  Indeed, the ALJ is not required to discuss or analyze every piece of evidence presented. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

12.     Moreover, the ALJ's determination that A.I.V. was not disabled because he did not have two marked limitations or one extreme limitation in attending to and completing tasks, interacting and relating with others, and caring for himself is supported by substantial evidence.

With respect to the domain of attending and completing tasks, the Commissioner considers the claimant's ability to "focus and maintain [his] attention, and how well [he can] begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).  Here,

the ALJ acknowledged that A.I.V. had some limitations in this domain, noting, for instance, that A.I.V.'s psychiatrist reported in April 2009 that A.I.V. had difficulty sitting still and paying attention and that he was diagnosed with ADHD, impulse control traits, and sibling relational problem. (R. 19, 178-80.) The ALJ concluded, however, that A.I.V.'s limitations in this domain did not rise to a marked or severe level. In arriving at this determination, the ALJ relied upon a January 2010 questionnaire from A.I.V.'s first grade teacher Kelly Piccirillo ("Piccirillo") who reported that A.I.V. had "no" problems in this domain and that his "functioning appear[ed] age-appropriate." (R. 19, 135.) Notably, Piccirillo's report was consistent with the other school evidence in the record, namely A.I.V.'s report cards from kindergarten and second grade that showed that he was performing well grade-wise and that his social/personal growth skills and work habits were rated either "satisfactory" or "excellent." (R. 153-54, 172-73.) Piccirillo's report was also consistent with various therapy treatment notes that reflect that A.I.V. was doing well in school and did not exhibit behavioral problems there. (R. 179, 223, 227, 233.) Additionally, as the ALJ noted, State Agency pediatric consultant J. Meyer reviewed the evidence in A.I.V.'s file and opined in March 2010 that A.I.V. had "no" limitation in this domain. (R. 19, 188.) A State agency consultant's opinion may constitute substantial evidence if, as here, it is supported by the evidence in the record. 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling ("SSR") No. 96–6p, 1996 WL 374180, *2 (1996).

With respect to the domain of interacting and relating with others, the Commissioner weighs a claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Here, the ALJ's finding that A.I.V. had a less than marked limitation in this

domain was supported by A.I.V.'s school and medical records which showed, overall, that A.I.V. performed well in school and got along with others, and that his behavioral problems were effectively managed with medication and therapy. Further, A.I.V. himself testified that he had friends at school, that he played with his brother and cousin outside of school although he sometimes fought with them, he played baseball and soccer, that he went to school every day and was not a discipline problem, and that he did not fight in class. (R. 20, 32-39.) Additionally, State Agency consultant J. Meyer opined that Plaintiff had a less than marked limitation in this domain. J. Meyer specifically noted that A.I.V. had a history of aggressive behavior and had been diagnosed with ADHD, ODD, and impulse control disorder, but also noted that no significant concerns were reported by his school teacher with respect to this area. (R. 20, 189.) Therefore, it was reasonable for the ALJ to conclude that A.I.V. had a less than marked limitation in interacting and relating with others.

    Nonetheless, Plaintiff argues that, in arriving at his determination with respect to this domain, the ALJ relied too heavily upon the evidence related to Plaintiff's ability to function at school in a structured environment, rather than at home. In support of this contention, Plaintiff directs the Court to certain evidence in the record related to his home environment that shows that A.I.V. was violent, did not get along with his mother or other adults, that he was kicked out of the Boys' and Girls' Club because of fighting, and that he had previously pulled a knife on his cousin and put his cousin in a choke-hold. Plaintiff is correct that "the Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting," including, if the child's symptoms are brought under control by the environment, "the claimant's functioning outside of the highly structured setting." 20 C.F.R. § 416.924c(a)(d). The regulation, however, does not require the ALJ "to explicitly discuss

his consideration of these factors in the decision." Watson ex re. K.L.W. v. Astrue, No. 07-CV-6417T, 2008 WL 3200240, at *4-*5 (W.D.N.Y. 2008) (quoting Turner v. Barnhart, No. 05-3509, 2006 WL 2460876, at *2 (E.D. Penn. Aug. 21, 2006)).  The Court finds that the ALJ properly assessed A.I.V.'s functional capacity both in and outside of his school environment.   While the ALJ did not exhaustively address A.I.V.'s behavior at home, he did note briefly that A.I.V. exhibited verbal and physical aggression at home and that A.I.V. was on medication and in therapy.  (R. 20.)  The ALJ also discussed A.I.V.'s family life, pointing out that A.I.V. and his family were seen at New Directions Youth and Family Services for about one year and that they successfully completed a program on managing violence, behavioral problems, and mental health issues. Further, the ALJ stated generally in the beginning of his decision that he evaluated how A.I.V. functions in all settings and all times.  (R. 15-16).

With respect to the domain of caring for oneself, the Commissioner must consider how well the child maintains a healthy emotional and physical state, including how well he copes with stresses in his environment, and whether he takes care of his health, possessions, and living area.  20 C.F.R. § 416.926a(k).  Here, the ALJ concluded that A.I.V. had no limitation in this domain, pointing out that A.I.V.'s first grade teacher reported that A.I.V. had "no" problems in this domain.  (R. 22, 137.)  The ALJ acknowledged that there was evidence in the record that A.I.V. exhibited some OCD traits, was a perfectionist and was meticulous, especially regarding his clothes.  (R. 22, 177-80.)  However, as the ALJ noted in his decision, there was also evidence that A.I.V.'s behavioral conditions improved when he was on medication.  (R. 23-25, 40, 178, 221.)  Accordingly, it was reasonable for the ALJ to find no limitation with respect to A.I.V.'s ability to care for himself.

Plaintiff contests the ALJ's finding that A.I.V. had no limitation in this domain on the

basis that the ALJ ignored the medical evidence showing A.I.V.'s "poor frustration tolerance and destructive verbal and physical aggression," and that he failed to credit A.I.V.'s mother's testimony that his behavioral problems prevent him from grooming and dressing himself, feeding himself, performing household chores and obeying safety rules.  With respect to the former contention, and as previously discussed, the Court is satisfied that the ALJ adequately considered all of the relevant evidence in the record and provided, either explicitly or implicitly, the reasons for his determinations.  With respect to the latter contention, and as discussed further below, the ALJ properly determined that the mother's testimony with respect to Plaintiff's physical limitations was not entirely credible.

As a final matter, the Court finds no merit to Plaintiff's particular contention that the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to obtain medical expert testimony with respect to A.I.V.'s functional limitations.  An ALJ may ask for and consider opinions from medical experts on the nature and severity of a claimant's impairment(s).  20 C.F.R. § 416.927(f)(2)(iii).  Here, however, there was no basis for the ALJ to exercise his discretion to do so. As discussed above, the ALJ thoroughly addressed the well-developed medical and school evidence in assessing equivalence at step 3 of his sequential evaluation. No evidentiary gaps in A.I.V.'s medical history are discernable to the Court, and Plaintiff has failed to otherwise identify any information to suggest that additional expert medical testimony might have led the ALJ to reach a different conclusion.  Where, as here, there are no obvious gaps, and the record presents a complete medical history, the ALJ is under no duty to seek additional information before rejecting a claim.  See Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996).

13.     Next, Plaintiff argues that the ALJ improperly disregarded the testimony of A.I.V.'s mother.  Specifically, Plaintiff asserts that the ALJ's credibility assessment is

9

deficient because the ALJ only mentioned A.I.V.'s mother's testimony in relation to the domain of health and physical well-being, and because the ALJ failed to articulate reasons for discounting her testimony.

14.     The Court finds that the ALJ did not err in assessing A.I.V.'s mother's testimony, and that the ALJ's credibility determination is supported by substantial evidence.

15.     First, the Second Circuit has held that when reviewing an ALJ's step 3 finding, a court can look to other portions of the decision to find substantial evidence support or to glean the ALJ's rationale. Salmini v. Comm'r of Soc. Sec., 371 F'Appx. 109, 113 (2d Cir. 2010). While the ALJ did not discuss Ms. Skibinski's testimony in relation to each domain (or the three at issue now), he did thoroughly summarize her testimony when discussing the physical health and well-being domain (R. 24.). Additionally, the ALJ explicitly stated that he did not find Ms. Skibinski's testimony fully credible and explained his reasoning. (R. 25).

16.     Second, as a fact-finder, an ALJ is free to accept or reject the testimony of a claimant's parent. See Williams on behalf of Williams, 859 F.2d at 260. A finding that a witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record. Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983). Here, the ALJ discounted Ms. Skibinksi's testimony because, as he explained, it was inconsistent with the objective evidence of record. (R. 25.) Ms. Skibinksi testified that A.I.V. was lethargic in school, he was hyper, angry and fought, he had witnessed domestic violence at home and would not talk at therapy sessions, he had problems getting along with others, had violent tendencies, and that he engaged in regressive behavior such as wetting himself and sucking his thumb. (R. 25, 39-53.) The ALJ acknowledged that the record contained evidence that A.I.V. witnessed

domestic violence at home, that he had issues with ADHD, and that A.I.V. had "significant life stressors dealing with home issues." (R. 25.) However, the ALJ, discussing the relevant evidence, explained that Ms. Skibinksi's testimony was inconsistent with the other evidence in the record which showed, overall, that A.I.V.'s condition improved with medication and therapy, that he did well in school, and that he was able to get along with others. (R. 25.) It was therefore reasonable for the ALJ to find Ms. Skibinski's testimony not entirely credible.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: October 28, 2014
        Buffalo, New York

                                /s/William M. Skretny
                                WILLIAM M. SKRETNY
                                      Chief Judge
                               United States District Court